**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

QUAN X. ANDERSON MUSE,

        Plaintiff,

v.                            Case No.: 3:25-cv-1095-WWB-LLL

JAX 02 LLC,

        Defendant.

_____/

## <u>ORDER</u>

THIS CAUSE is before the Court on Defendant's Motion to Dismiss Complaint (Doc. 14) and Plaintiff's Response in Opposition (Doc. 15).[1]  For the reasons set forth below, Defendant's Motion will be granted in part.

## I.    BACKGROUND

Plaintiff Quan X. Anderson Muse began working for the Dave's Hot Chicken ("**Dave's**") restaurant in Worcester, Massachusetts in October 2024.  (Doc. 1, ¶ 11).  He then transferred to the Dave's in Gainesville, Florida for personal reasons.  (*Id.* ¶ 12).  In April 2025, Defendant offered Plaintiff a position as a shift leader, apparently for the closing shift, at the Dave's restaurant in Jacksonville, Florida.  (*Id.* ¶¶ 14–15; *see also id.* ¶¶ 17, 20).  At some point thereafter, Plaintiff accepted the offer, relocated to Jacksonville, and began working for Defendant.  (*See id.* ¶¶ 14–15, 17).   Plaintiff then asked his

---

[1] Defendant's Motion fails to comply with Local Rule 3.01(g), and both filings fail to comply with this Court's January 13, 2021 Standing Order.  In the interests of justice, the Court will consider the filings because this matter is fully briefed and ripe for resolution on the merits, but the parties are cautioned that future failures to comply with all applicable rules and orders of this Court may result in the striking or denial of filings without notice or leave to refile.

assistant manager, Ryan, to reduce the number of closing shifts he was assigned to. (*Id.* ¶ 17). Plaintiff claims this accommodation was necessary to enable him to provide care and support for his girlfriend, who was experiencing severe anxiety, panic attacks, depression, and complications from a high-risk pregnancy. (*Id.* ¶¶ 16, 18, 39). Nonetheless, Ryan denied Plaintiff's request, telling him, "We can't give you those hours," and "This is why you came down here." (*Id.* ¶ 20). After being rebuffed, however, Plaintiff took his request to the owner of the restaurant, who approved it. (*Id.* ¶ 21). Thereafter, Plaintiff's general manager, Jordan Harrington, began harassing Plaintiff at work and excluding him from management-level meetings and communications. (*Id.* ¶¶ 22–30). Harrington and other coworkers allegedly mocked Plaintiff's girlfriend and Plaintiff's "situation," an apparent reference to his girlfriend, her pregnancy, or her disability. (*Id.* ¶¶ 23, 25).

Two weeks after he made his initial request for an accommodation, and two months after he was initially hired, Plaintiff was fired. (*See id.* ¶¶ 14–15, 17, 31). The proffered reasons for Plaintiff's termination were "flirtatious behavior," "performance issues," and "unethical work behavior." (*Id.* ¶ 32). Again, Plaintiff contacted Dave's' owner, who stated that the decision to fire Plaintiff had been made by General Manager Harrington. (*Id.* ¶ 34). Plaintiff had not previously been subject to any formal write-ups or disciplinary actions at Dave's. (*Id.* ¶ 33). After exhausting his administrative remedies, Plaintiff initiated the instant action, bringing claims for association discrimination (Count I), failure to provide reasonable accommodation (Count II), and retaliation (Count III) under the Americans with Disabilities Act ("**ADA**"). (*See generally id.*).

## II.    LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).  Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.    DISCUSSION

As an initial matter, Plaintiff and Defendant agree that Counts II and III should be dismissed, and Plaintiff requests leave to amend only Count I.  Counts II and III will therefore be dismissed with prejudice.  *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave

to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

As to Count I, the ADA bars employers from discriminating against qualified employees on the basis of disability.  42 U.S.C. § 12112(a).  "Under § 12112(b)(4), the ADA defines 'discriminate' to include 'excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.'"  *EEOC v. STME, LLC*, 938 F.3d 1305, 1318 (11th Cir. 2019) (quoting 42 U.S.C. § 12112(b)(4)).  To state a claim for association discrimination under § 12112(b)(4), a plaintiff must plead facts sufficient to plausibly suggest "(1) that she was subjected to an adverse employment action; (2) that she was qualified for the job at that time; (3) that her employer knew at that time that she had a relative [or associate] with a disability; and (4) that the adverse employment action occurred under circumstances which raised a reasonable inference that the disability of the relative [or associate] was a determining factor in the employer's decision."  *Id.* at 1319 (quotation omitted); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (describing the *Twombly/Iqbal* pleading standard as it applies to discrimination claims).

Defendant first argues that Plaintiff and his pregnant girlfriend are not relatives or associates under § 12112(b)(4), seemingly because they are not relatives.  Defendant's narrow reading of § 12112(b)(4) improperly excises "association" from the statute.  While allegations of loose or tenuous associations with disabled persons "are insufficient to [] state a colorable claim for associational discrimination," *Smith v. Lowe's Home Ctrs., LLC*, No. 3:23-cv-163, 2024 WL 6951457, at *3 (M.D. Fla. Sept. 24, 2024), "the nature of the

[association] in question need not be familial," *STME, LLC*, 938 F.3d at 1319.  Defendant fails to cite to any case limiting ADA association discrimination claims to family members and suggests that a case interpretating the *Family* Medical Leave Act confines the relationships and associations covered by § 12112(b)(4) to those between spouses or parents and their children.  But "whereas a family relationship is the paradigmatic example of a relationship under the association provision of the ADA, a less orthodox association might suffice in certain scenarios."  *Smith*, 2024 WL 6951457, at *3 (quotation omitted); *see also* 29 C.F.R. § 1630.8 (prohibiting discrimination based on "family, business, social or other relation[al]" associations).  Such is the case here, at least at this stage of the proceedings, because Defendant has failed to show otherwise.

Defendant next argues that Count I fails to state a claim for association discrimination because the ADA does not require employers to accommodate the disabilities of a nondisabled employee's associates.  Plaintiff concedes that point and counters that Defendant misreads the Complaint.  According to Plaintiff, Count I alleges that Plaintiff's girlfriend's disability was a determining factor in the adverse employment actions Plaintiff was subjected to.  The Court agrees and concludes that Plaintiff pleads facts raising a plausible suggestion that his girlfriend's disability was, indeed, a determining factor in his termination.

Plaintiff alleges that Defendant discriminated against him by harassing him, subjecting him to hostile treatment, denying his accommodation request, excluding him from management functions, and terminating him.  (Doc. 1, ¶ 41).  An adverse employment action, however, must "result[] in some tangible, negative effect on the plaintiff's employment."  *Martin v. Eli Lilly & Co.*, 702 F. App'x 952, 956 (11th Cir. 2017)

5

(quotation omitted); *see also Davis v. Orange Cnty.*, No. 6:22-cv-2222, 2025 WL 948934, at *3 (M.D. Fla. Mar. 30, 2025).  Harassment and hostility are not, by themselves, adverse employment actions.  *Cf. Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860–61 (11th Cir. 2020).  Indeed, "hostile work environment, discrimination, and retaliation claims are each 'founded on a separate transaction or occurrence' and require the plaintiff to establish different facts."  *Chang v. Forever Vets LLC*, No. 3:25-cv-563, 2025 WL 1634941, at *1 (M.D. Fla. June 9, 2025) (quoting *Palmer v. Albertson's LLC*, 418 F. App'x 885, 889 (11th Cir. 2011)).  Here, Plaintiff never pleaded a hostile work environment claim and now waives a defense of his retaliation claim.  Therefore, Plaintiff's allegations of harassment and hostility are relevant only to the extent that they suggest that his girlfriend's disability was a determining factor in a qualifying adverse employment action. *See, e.g.*, *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1195 (11th Cir. 2004).

An employer's failure to accommodate is not, by itself, an adverse employment action.  *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023); *Presley v. Gulf Cnty. Sch. Bd.*, 730 F. Supp. 3d 1218, 1227 (N.D. Fla. 2024).  And the ADA does not require an employer to schedule its meetings in a way that will accommodate the disability of an employee's associate.  *See Rocky v. Columbia Lawnwood Reg'l Med. Ctr.*, 54 F. Supp. 2d 1159, 1165, 1167 (S.D. Fla. 1999) ("[E]ven if the Plaintiff's need to care for her son were the reason that she was absent or tardy, the ADA does not require the Defendant to accommodate that need.").  Therefore, Plaintiff's exclusion from meetings and communications is independently actionable only to the extent that it negatively impacted his hiring, advancement, discharge, compensation, training, or other terms,

conditions, or privileges of his employment.  Plaintiff, however, fails to allege any causal connection between his exclusion and an independent adverse employment action.  Nor do Plaintiff's allegations raise an inference of relation between the two.  In fact, Plaintiff disclaims the possibility that his termination was the result of performance issues, which could otherwise be inferred to be the result of an inability to receive adequate communications.  *See Beasley*, 69 F.4th at 755 (stating that a jury could find that employee would have received a better evaluation if he had been provided with the summaries of pre-shift meetings that he repeatedly requested).  Moreover, while Plaintiff claims that he was excluded from communications that were essential to his position, he fails to identify any essential information that was withheld from him, and he admits that he received updates on management meetings during his breaks from work.  (Doc. 1, ¶¶ 26–27).

Termination is an adverse employment action.  *See* 42 U.S.C. § 12112(a).  Plaintiff alleges that Defendant's proffered reasons for his termination were pretextual, and that its "true motivation for terminating [him] was [both] retaliation for his request for reasonable accommodation and discrimination based on his association with an individual with a disability."  (Doc. 1, ¶ 36).  As support, Plaintiff claims that "[t]he timing of [Plaintiff's] termination immediately followed Plaintiff's protected activity," i.e., his seeking and obtaining a new work schedule with fewer closing shifts.  (*Id.* ¶ 33c). Although Defendant's managers were neither inclined nor required to provide that accommodation, they appear to have first learned of Plaintiff's girlfriend's disability when Plaintiff presented the request.  Thereafter, General Manager Harrington allegedly began disparaging Plaintiff's girlfriend, other individuals appear to have mocked Plaintiff's

"situation" vis-à-vis his girlfriend, (*id.* ¶ 25), and Plaintiff was removed from management communications, effectively excluded from meetings, and then fired.  The apparent proximity of these actions to Plaintiff's disclosure of his girlfriend's disability raises at least a plausible suggestion that Plaintiff's girlfriend's disability was a determining factor in Defendant's decision to terminate Plaintiff.  *See Wascura v. City of S. Mia.*, 257 F.3d 1238, 1244–45 (11th Cir. 2001) ("[A] close temporal proximity between two events may support a finding of a causal connection between those two events."); *Cleveland*, 369 F.3d at 1195 (stating that "evidence of how [employer] treated [employee] differently after she came back to work with her disability" "allowed the jury to infer disability discrimination").  Moreover, Plaintiff claims that General Manager "Harrington subjected Plaintiff to increased scrutiny, including excessive monitoring via security cameras, searching for reasons to discipline him."  (Doc. 1, ¶ 28).  Despite this scrutinous monitoring, Plaintiff alleges that Defendant refused to provide documentation supporting its allegations of Plaintiff's flirtatious and unethical behavior and performance issues. Plaintiff, though, asserts that he never received any written warnings or formal disciplinary actions during his employment, and worked for two other Dave's locations without incident.  Plaintiff therefore raises a plausible inference that Defendant had no documentation and provided Plaintiff with nondiscriminatory justifications for a termination that was, in fact, informed by discrimination.

At the motion to dismiss stage, such a showing is sufficient.  Plaintiff need only reasonably suggest that his girlfriend's disability was a determining factor in an adverse employment decision.  *STME, LLC*, 938 F.3d at 1319; *Surtain*, 789 F.3d at 1246.

8

Because Plaintiff has sufficiently pleaded factual allegations raising that suggestion, Defendant's Motion will be denied as to Count I.

## IV.    CONCLUSION

For the reasons set forth herein, it is **ORDERED** and **ADJUDGED** that Defendant's Motion to Dismiss Complaint (Doc. 14) is **GRANTED in part** and Counts II and III are **DISMISSED with prejudice**.  In all other respects, the Motion is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida on March 19, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE


Copies furnished to:

Counsel of Record

9